IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PENNY P. [1],

    **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of
Social Security,**

    **Defendant.**

Case No. 21-cv-1055-SPM

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Income Security (SSI) benefits pursuant to 42 U.S.C. § 423 and 42 U.S.C. §§ 1382 and 1382c, respectively[2].

## PROCEDURAL HISTORY

On September 23, 2019, plaintiff applied for DIB, alleging a disability onset date of January 1, 2015. (Tr. 221). On October 18, 2019, she applied for SSI, alleging a

---

[1] In keeping with the court's practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.,* and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.,* and 20 C.F.R. pt 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

disability onset date of September 18, 2019. (Tr. 224). On March 13, 2020, plaintiff was advised that she did not qualify for benefits on either of her claims. (Tr. 143). On April 22, 2020, plaintiff requested reconsideration. (Tr. 147). On August 25, 2020, plaintiff was advised that her claim had been independently reviewed; however, the previous denial was found proper under the law. (Tr. 148). On September 2, 2020, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") because she claimed to be disabled and unable to work. (Tr. 154). After holding an evidentiary hearing, the ALJ denied the application on March 5, 2021. (Tr. 10-27). The Appeals Council denied plaintiff's request for review on July 2, 2021, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1-6). Plaintiff has exhausted administrative remedies and filed a timely complaint with this Court (Doc. 1).

## ISSUE RAISED BY PLAINTIFF

In her brief, plaintiff raises the following specific issue:

> "Whether the ALJ erred in relying on unreliable VE opinions that were in conflict with the DOT and public information from sources accepted by administrative notice?"[3]

## APPLICABLE LEGAL STANDARDS

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

---

[3] In general, plaintiff claims her issues are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact of the ALJ are supported by the record as a whole.

or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ, Gerald Meyr, followed the five-step analytical framework described above. (Tr. 10-33). He determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 1, 2015 and that she meets the insured status requirements through March 31, 2021. Plaintiff was born on May 10, 1973 and was 41 years old on the alleged date of onset, which is defined as a younger individual age 18-44.

The ALJ found that plaintiff had the following severe impairments that significantly limit her ability to perform basic work activities: obesity, degenerative dis disease of the lumbar spine, irritable bowel syndrome, chronic liver disease, diabetes, diabetic polyneuropathy, chronic pain syndrome, fibromyalgia, depressive, bipolar and related disorders, post-traumatic stress disorder, anxiety, and substance abuse. The ALJ further found that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments.

The ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a)[4] and 416.967(a),

> "[e]xcept that she can never climb ladders, ropes and scaffolds. She can balance on narrow, slippery or erratically moving surfaces occasionally. She can climb ramps and stairs, scoop, or crouch occasionally, but she can never kneel or crawl. She can handle objects, which is gross manipulation, frequently with the bilateral upper extremities. She can finger, which is fine manipulation of items no smaller than the size of a paper clip, frequently with the bilateral upper extremities. She can have no use of hazardous machinery and no exposure to unshielded moving mechanical parts. She should not have exposure to unprotected heights or extreme vibrations. She is limited to remembering, understanding, and carrying out simple and routine instructions and tasks consistent with SVP levels 1 and 2 type jobs with no strict production quotas with an emphasis on a per shift rather than a per hour basis, and involving only simple, work-related decisions with few if any workplace changes. She cannot have interaction with the general public and only tolerate occasional interaction with coworkers and supervisors. She cannot do tandem tasks or teamwork with coworkers." (Tr. 19-20).

The ALJ found that Plaintiff was unable to perform any past relevant work and that she has at least a high school education.

The ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

---

[4] To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

supports a finding that the plaintiff is "not disabled", whether or not she has transferable job skills. The ALJ also found that, considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. Finally, the ALJ found that the plaintiff has not been under a disability from January 1, 2015, through the date of this decision, March 5, 2021.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. In view of plaintiff's argument, the Court will omit a discussion of the medical treatment.

**1. Agency Forms**

Plaintiff's date of birth is May 10, 1973. (Tr. 221). Plaintiff claims she was unable to work as of January 1, 2015 because of her disabling condition and that she is still disabled (as of 9/23/2019). (Tr. 178). Plaintiff subsequently filed another application for disability benefits indicating that she was still disabled (Tr. 895).

**2. Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing on January 14, 2021[5]. (Tr. 34-62). In lieu of making an opening statement, plaintiff's counsel stated that she would rely on her pre-hearing brief. (Tr. 43).

---

[5] Plaintiff is represented by a different attorney in this Court.

Plaintiff testified regarding her symptoms, medical treatment, and daily activities. (Tr.44-54). Vocational expert ("VE") Thomas Polsin testified at the hearing. (Tr. 54). The ALJ asked the VE a hypothetical question which corresponded to the RFC assessment. (Tr. 58). The VE identified three jobs that could be done by a person with plaintiff's RFC: document preparer (DOT 249.587-018), addresser or hand packager (DOT 209.587-010), and stuffer (DOT 731.685-014), all of which were sedentary occupations, unskilled with an SVP of 2. (Tr. 58). The VE also testified to the number of each of those jobs in the national economy. (*Id.*).

At the close of the VE's testimony, the ALJ asked him whether all his testimony had been "consistent with the DOT." He replied that it had been. (Tr. 59).

## ANALYSIS

### Step 5 of the Sequential Analysis

The fifth step in the disability analysis framework focuses only on the types of work that the claimant can perform, not the positions the claimant is precluded from working. See *Weatherbee* v. Astrue, 649 F.3d 565, 569 (7th Cir.2011). Plaintiff's sole argument is that the ALJ failed to sufficiently identify and reconcile conflicts between the VE's testimony and the DOT. Specifically, plaintiff argues that there were "obvious conflicts" between the VE's testimony and the DOT that should have caused the ALJ to inquire further (Doc. 12). The Commissioner counters that the claimant was represented at the hearing and her attorney failed to challenge the VE testimony and failed to object to the opinions (Doc. 17).

In making the step five determination, which requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education and work experience, the ALJ generally relies on the DOT for information about the typical characteristics of jobs as they exist in the economy.[6] An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. See, 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee*, 649 F.3d at 569.

For assistance in determining step 5 of the sequential analysis, the ALJ solicited the opinions of vocational expert ("VE") Thomas Polsin and sought testimony from him based upon the following hypothetical:

> "So, ... would you now assume an individual of the claimant's age, education, and work experience who would be able to perform sedentary work with the following exceptions and limitations. Sedentary work will be as defined by the regulations. This individual can never climb ladders, ropes, or scaffolds. This individual can only occasionally climb ramps or stairs. The individual can only occasionally balance on narrow, slippery, or erratically moving surfaces. Individual could occasionally stoop and crouch, but never kneel and never crawl. Individual could handle objects, that is gross manipulation, frequently with bilateral extremities. Individual can finger, that is fine manipulation of items as small as the size of a paperclip, frequently with the bilateral extremities. Individual can feel frequently with the bilateral upper extremities. This individual should

---

[6] The agency is developing a replacement for the DOT, referred to as the "Occupational Information System." This system will be the "primary source of occupational information SSA staff use in our disability adjudication process." The information will be available through an online platform called the Vocational Information Tool. The software for that platform is in development. See, www.ssa.gov/disabilityresearch/occupational_info_systems.html, visited on April 25, 2022.

have no use of the hazardous machinery and no exposure unshielded, moving mechanical parts. No exposure to unprotected heights, no exposure to extreme vibrations. This individual is limited to remembering, understanding, and carrying out simple and routine instructions and tasks consistent with SVP 1 and 2 type jobs, with no strict production quotas, with an emphasis on a per-shift rather than a per-hour basis involving only simple work-related decisions with few, if any, workplace changes. This individual should have no interaction with the public, only occasional interaction with coworkers and supervisors, but the individual should have no tandem tasks or teamwork with coworkers." (Tr. 56-58).

In response, the VE testified that claimant would not be able to perform past relevant work, and that "those jobs would be eliminated exertionally." (Tr. 58). When asked whether other competitive work remained in the national economy that claimant could perform with the limitations, the VE responded with three occupations, document preparer (DOT 249.587-018), addresser or hand packager (DOT 209.587.010), and stuffer (DOT 731-685-014), all of which were sedentary occupations, unskilled with an SVP of 2. (Tr. 58).

When asked, the VE stated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 61). Claimant's attorney indicated that everything was covered by the ALJ and that she had no questions for the VE. (*Id.*).

At step five of the process for evaluating disability, the ALJ determines whether a claimant unable to do past relevant work can do any other work based on his RFC and other characteristics. *Weatherbee*, 649 F.3d at 569. The Commissioner is responsible for presenting evidence demonstrating that a claimant can perform work existing in significant numbers in the national economy; such evidence may include testimony by a VE. *Id.* When a VE testifies in front of an ALJ, the ALJ must "[i]dentify and obtain a

reasonable explanation for any conflicts between occupational evidence provided by [the] VE[ ] ... and information in the [DOT] ... and [e]xplain in the determination or decision how any conflict that has been identified was resolved." Social Security Ruling ("SSR") 00-4p,5 2000 WL 1898704, at *1 (Dec. 4, 2000); *see also Brown v. Colvin*, 845 F.3d 247, 254–55 (7th Cir. 2016) (holding that "if a vocational expert's testimony appears to *conflict* with the DOT, the ALJ must obtain a reasonable explanation for the apparent conflict" (quotation marks omitted)). The ALJ must address an apparent conflict even if the claimant fails to object during the hearing. *Brown*, 845 F.3d at 255. "A conflict is apparent if it is so obvious that the ALJ should have picked up on [it] without any assistance." *Weatherbee*, 649 F.3d at 570 (alteration in original) (quotation marks omitted).

Although the DOT is still frequently used and there is no Seventh Circuit precedent finding that reliance on it is *per se* error, it is readily accepted that the DOT, last updated in 1991 and generally containing information describing jobs as they existed in 1977, is outdated, if not downright obsolete. *See Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). As the Seventh Circuit noted in *Browning*, "[n]o doubt many of the jobs have changed and some have disappeared. *Id.;* see also *Spicher v. Berryhill,* 898 F.3d 754, 759 (7th Cir. 2018).

Two of the three jobs the VE cited in this case—Document Preparer and Addressor—are particularly problematic. See *Yanke v. Kijakazi,* 2021 WL 4441188 (E.D. Wis. Sept. 28, 2021). "The Social Security Administration does not try to determine whether an applicant would have any real chance of landing a job, ... but it does require

Page **10** of **13**

a determination of whether work that the applicant is capable of doing 'exists in significant numbers' in the economy." *Herrmann v. Colvin*, 772 F.3d 1110, 1112-13 (7th Cir. 2014) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.966(a)). A claimant is disabled from working "[i]f the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist)," or "if there is an insignificant number of such jobs." *Id.*

Both of these issues are concerning. Indeed, other courts within this district have questioned the job of document preparer. See *Yanke,* 20-CV-1055*,* 2021 WL 4441188; *Dearth v. Berryhill,* 2:16-CV-487-JEM, 2018 WL 1225045 (The job of preparing documents is one that seems particularly likely to have changed in the last 37 years given the shift to digital storage and advances in scanning technology"); *Kordeck v. Colvin*, 2:14-CV-431-JEM, 2016 WL 675814 (N.D. Ind. Feb. 19, 2016) (stating that the job of document preparer, DOT 249.587-018, is an example of a job that has been "reduced significantly in number if not rendered obsolete by the rise of the internet"). Furthermore, the job of "addresser" is even more resoundingly obsolete. *Yanke,* 20-CV-1055*,* 2021 WL 4441188; see *e.g., Hardine v. Comm'r of Soc. Sec.*, No. 4:19-CV-147-DAS, 2021 WL 1098483 (N.D. Miss. Feb. 26, 2021) (finding that "the job of 'addresser' is obsolete, and this court will not consider it in its calculations in the future"); *Jason Robert F. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-00201-BR, 2021 WL 1010946 (D. Or. Mar. 16, 2021) (concluding that "the job of Addresser is obsolete, and, therefore, the ALJ erred at Step Five when she found that job exists in significant

numbers in the national economy"); *Analia D. v. Berryhill*, No. CV 18-3689 MRW, 2019 WL 856854 (C.D. Cal. Feb. 6, 2019) ("Substantial evidence and common sense do not – and reasonably could not – support the agency's conclusion that thousands of people work every day typing envelopes for a living."). Even a 2011 Social Security Administration medical-vocational claims review found the job of "addresser" to be obsolete. *See N.B. v. Saul*, No. 20-CV-01138-LB, 2021 WL 1947526 (N.D. Cal. May 14, 2021).

With respect to job availability in the national economy, the VE testified that there were approximately 63,900 document preparer jobs, 71,000 addresser jobs, and 11,000 stuffer jobs. (Tr. 58). However, another VE testified on September 21, 2021, nine months after this hearing occurred on January 14, 2021, that there were 46,646 document preparer jobs available and 5,695 addresser jobs available. *Yanke,* 20-CV-1055*,* 2021 WL 4441188. Nevertheless, when discounting the jobs of document preparer and addresser, only 11,000 stuffer jobs available in the national economy is not significant within the national economy.

In sum, the ALJ's "blind reliance on the vocational expert's testimony" does not constitute a reasoned analysis of plaintiff's disability application. *Dimmett*, 816 F.3d at 490. Accordingly, ALJ Mayr's determination that plaintiff could perform jobs that exist in significant numbers in the national economy is not based on substantial evidence.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has

not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED: April 29, 2022**

*/s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**